**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RYAN FREDERICKS AND ALICIA FREDERICKS** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 26-cv-01378** |
| **ASSURANT SPECIALTY** | : | |
| **and** | : | |
| **AMERICAN SECURITY INSURANCE COMPANY** | : | |
| **and** | : | |
| **ROCKET MORTGAGE, LLC** | : | |

**MEMORANDUM**

**MURPHY, J.** **August 12, 2026**

A fire destroyed the home of Ryan and Alicia Fredericks over two years ago. To make a bad situation worse, their homeowners' insurance policy expired the same day. The expiration automatically triggered a forced-place policy established by their mortgage company, Rocket Mortgage. A forced-place policy allows mortgage lenders to protect their collateral when homeowners let their policies lapse; its benefits might repair or replace the home or pay off the mortgage. But here, as far as the Fredrickses could tell, nothing happened. They spent two years trying to get information but could not even get a copy of the policy. After the Fredrickses sued, Rocket Mortgage and the insurance company moved to dismiss, arguing that the Fredrickses lack standing to claim the benefit of the forced-place policy, and that they exceeded the one-year limitations period stated in the policy (which the Fredrickses found out about when they finally saw the policy attached to the motion to dismiss). Defendants are not

without some footing — like most forced-place policies, this one names the mortgage-holder, not the homeowners, and contractual time-limits on lawsuits are generally enforceable. But for the reasons explained below, we hold that the Fredrickses have standing because they are intended third-party beneficiaries of the policy, and we conclude that the policy's time bar cannot be enforced against the Fredrickses because defendants allegedly withheld the policy despite diligent inquiries. We also allow the bad faith claim to proceed against the American Security Insurance Company. We dismiss only the bad faith claim against Rocket Mortgage because it was not the insurer here and all claims against Assurant Specialty because it is an improper party to this action.

## I. BACKGROUND

Ryan and Alicia Fredericks owned a residence in Edinburg, Pennsylvania (the Property). DI 18 at ¶ 1. On or about January 9, 2024, a fire "completely destroy[ed plaintiffs'] Property." *Id.* at ¶ 16. At the time, the Property was covered under a Lender Placed Insurance Policy, or a "forced-place" policy[1] (the Policy) issued by American Security Insurance Company (ASIC) to Rocket Mortgage, LLC (Rocket). DI 18 at ¶ 8.

Generally, the Policy provides coverage for damage to the Fredrickses' dwelling, subject to certain conditions. Within the Policy is a "Limit of Liability" provision — this is the maximum coverage amount that could be issued to Rocket in the event of a loss on the Property. DI 20-1 at 1. ASIC and Assurant provided a copy of the Policy to us albeit with the Limit of Liability amount redacted. *Id.* at 1-13. Additionally, attached to the Policy is an

[1] A forced-place policy is insurance taken out by a lender to protect its interests when the homeowner's insurance lapses. Most mortgages require homeowners to maintain adequate property insurance. If the lender does not have proof of required coverage, or if it believes the homeowner's coverage is insufficient, the loan documents usually allow the lender to buy coverage and charge them for it. In this case, plaintiffs' insurance policy ended on January 9th, thereby triggering the Policy in place at the time the fire occurred.

Endorsement — a written alteration that updates the original coverage terms of the Policy. DI 20-1. With respect to the Loss Settlement and Loss Payment Provisions, the Endorsement clarifies: "It is understood and agreed that throughout this Certificate **you** and **your** refer to the financial institution as **named insured** and the **borrower** shown in the Declarations." *Id.* at 13. The Loss Settlement Provision in the original Policy enumerated four amounts that benefits could be paid out in: "(1) The Limit of Liability under this Certificate that applies to the **residential property**; (2) The replacement cost of that part of the **residential property** damaged with material of like kind and quality and for like use; (3) The necessary amount actually spent to repair or replace the damaged **residential property**; or (4) the **net loan balance** at the time of loss." *Id.* at 8. Notably, the Endorsement removed the net loan balance as a payout option. DI *Id.* at 13. It also altered the Loss Payment Provision from making the loss "payable to the **named insured**" to "payable to the **named insured** and the **borrower** as their interest appear . . . [.]" *Id.* at 9, 13. The Policy further contains its own statute of limitations period; it states that "no action can be brought unless the Certificate provisions have been complied with and the action is started within one year after the date of loss." *Id.* at 9.

According to plaintiffs, the Limit of Liability in the Policy exceeded the loan balance remaining on the Property's mortgage. DI 18 at ¶ 12. Plaintiffs further assert that ASIC paid out the remaining loan balance only to Rocket, which is not an option under the Loss Settlement Provision as altered by the Endorsement, and that the Policy benefits were neither put toward satisfying plaintiffs' mortgage nor toward restoring the Property. *Id.* at ¶¶ 21-22. Plaintiffs did not receive a copy of the Policy for two years from 2024-2025 despite numerous attempts by plaintiffs' public adjuster and counsel to obtain the Policy from the defendants. *Id.* at ¶¶ 23-31. Indeed, the first time plaintiffs claim that they were able to see the contents of the Policy was

when it was attached to defendants' motions to dismiss. Nevertheless, Rocket continues to seek premium payments from plaintiffs on a home that remains destroyed while keeping the Policy funds issued to them by ASIC in their possession. *Id.* at ¶¶ 34, 36.

As a result, plaintiffs have sued ASIC, Assurant Specialty (Assurant) — whom plaintiffs claimed is an "agent of ASIC" — and Rocket for (1) breach of contract and (2) insurer bad faith. *Id.* at ¶¶ 3, 38-46. All defendants moved to dismiss. DI 20; DI 21. At oral argument, plaintiffs agreed to dismiss Assurant from the suit so long as their claims remained against ASIC. DI 35 at 11:13-24. We now turn to defendants' motions.

## II. MOTIONS AT ISSUE

### A. 12(b)(1) motion to dismiss for lack of standing on both counts

ASIC/Assurant and Rocket filed motions to dismiss under Fed. R. Civ. P. 12(b)(1), asserting that plaintiffs lack standing to bring either count. DI 20-4 at 11-14; DI 21-1 at 8-9. Defendants claim that plaintiffs are neither named insureds under, nor third-party beneficiaries of, the Policy. DI 20-4 at 11-14; DI 21-1 at 8-9. They contend that plaintiffs are not parties to the contract because they are not listed explicitly as "named insured[s]" and that merely being listed as "borrower[s]" does not grant plaintiffs standing. DI 20-4 at 11-14; DI 21-1 at 8-9. They further argue that plaintiffs are not third-party beneficiaries because, upon contract formation, neither defendant intended that the Policy would benefit plaintiffs, nor was this implemented in the contract's language. DI 20-4 at 13; DI 21-1 at 9.

Plaintiffs respond that defendants recognized both plaintiffs and Rocket as named insureds under the Endorsement attached to the Policy. DI 22 at 11. They argue that they qualify as express third-party beneficiaries, citing the language of the Endorsement that conflates both Rocket (the named insured) with the plaintiffs (the borrowers). *Id.* at 10-12. Plaintiffs

maintain that, in the alternative, they also qualify as intended third-party beneficiaries, citing their inclusion in the Loss Settlement Provision of the Endorsement. *Id.* at 12-14.

**B. 12(b)(6) motion to dismiss due to the Policy's statute of limitations**

Defendants further argue that, even if plaintiffs have standing, their claims are nevertheless time-barred under the Policy's limitations period under Fed. R. Civ. P. 12(b)(6). DI 20-4 at 14-16; DI 21-1 at 10-11. They cite the Policy's one-year limitations period to file an action. DI 20-4 at 15; DI 21-1 at 10. The date of the fire and loss in question was January 9, 2024; plaintiffs sued on January 8, 2026 — a year after the Policy's bar date. Plaintiffs argue that applying the Policy's limitations period to their situation would be an unreasonable restriction on their ability to bring suit because they never received a copy of the Policy within the 2 years that they attempted to obtain it. DI 22 at 15. Plaintiffs therefore urge that the limitations period should not apply to them.

**C. 12(b)(6) motion to dismiss for failure to plead requisite elements of bad faith**

ASIC/Assurant also move to dismiss plaintiffs' bad faith claim as a matter of law, asserting that ASIC actually disbursed the benefits and that Rocket's alleged withholding of funds does not constitute bad faith by ASIC. DI 20-4 at 18-19. Plaintiffs maintain that, in addition to defendants' refusal to communicate, they are owed additional funds in excess of the mortgage balance that ASIC paid Rocket per the Policy terms, amounting to bad faith on ASIC's part. DI 22 at 11, 15-16. Rocket moves to dismiss plaintiffs' bad faith claim because Rocket is not the insurer under the Policy. DI 21-1 at 11. Plaintiffs suggest that the existence of a mortgage agreement and evidence of dealings with Rocket would scaffold their bad faith claim against Rocket. DI 35 at 32:6-25. However, beyond reference to the mortgage document during

oral argument, plaintiffs did not respond to Rocket's disavowal of "insurer" status in their written opposition to Rocket's motion to dismiss.

**D. Motion to dismiss Assurant Specialty from suit**

Lastly, Assurant seeks dismissal from all claims because it is neither a legal entity nor a signatory to the Policy. DI 20-4 at 20. Plaintiffs conceded as much at oral argument, provided their claims remained against ASIC as the proper party. DI 35 at 11.

## III. LEGAL STANDARDS

**A. 12(b)(1) motions**

A complaint facing dismissal under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing must plead facts adequate to demonstrate that the court has subject-matter jurisdiction. The plaintiff bears the burden of alleging (1) a concrete, particularized, and actual or imminent injury in fact; (2) a causal connection between that injury and the defendant's challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Conclusory allegations, speculative harms, or a bare statutory violation unaccompanied by concrete injury are insufficient to establish standing. *See Spokeo*, 578 U.S. at 338-41; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). On a facial 12(b)(1) challenge, we consider the complaint and referenced or attached documents in the light most favorable to the plaintiff. *See Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). A factual challenge permits us to consider evidence outside the pleadings and resolve disputed jurisdictional facts. *Id.* at 358.

**B. Standing under insurance contracts in Pennsylvania**

A named insured under a contract has Article III standing to enforce an insurance policy against the insurer. *See ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 822–23 (3d Cir. 1981). But others can have standing to enforce an insurance policy, too. Pennsylvania courts have permitted those who are not named insureds to enforce an insurance policy if they can establish that they are a third-party beneficiary under that policy. *See Konyk v. Pa. State Police of the Commonwealth of Pa.*, 183 A.3d 981, 987-88 (Pa. 2018). Pennsylvania law has adopted a dual framework to determine third-party beneficiary status for the purposes of standing to recover on a contract. A party is an express third-party beneficiary when both contracting parties have expressed an intention that the third party be a beneficiary, and that intention affirmatively appears in the contract itself. *See Guy v. Liederbach*, 459 A.2d 744, 750-51 (Pa. 1983) (discussing the third-party beneficiary framework under *Spires v. Hanover Fire Insurance Co.*, 70 A.2d 828 (1950) and overruling that framework to the extent it provided the exclusive test for third-party beneficiary status). Alternatively, a party is an intended third-party beneficiary when (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties[;]" and (2) either the performance "satisf[ies] an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* at 751 (citing Restatement (Second) of Contracts § 302 (Am. Law Inst. 1979)).

**C. 12(b)(6) motions**

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts, taken as true, to support a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on

its face when the pleaded facts permit the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678. Conclusory assertions and formulaic recitations of a claim's elements, without supporting factual allegations, are insufficient. *Twombly*, 550 U.S. at 555.

## IV. DISCUSSION

### A. Plaintiffs sufficiently alleged standing as intended third-party beneficiaries

Plaintiffs are not named insureds, but we conclude that they have alleged facts sufficient for intended third-party beneficiary standing.[2] Plaintiffs rely on the Endorsement's alteration of the Loss Settlement Provision. DI 22 at 11-12. They claim that the Endorsement changes the Loss Settlement Provision, namely changing the receiver of the payment to include the borrower, such that it no longer benefits just Rocket. *Id.* at 13-14. Therefore, plaintiffs claim, defendants intended to give plaintiffs the benefit of the promised performance, that is, the Policy benefits. *Id.* at 14. Defendants respond that the failure to issue a copy of the Policy to plaintiffs demonstrates that they were not intended beneficiaries. DI 26 at 3-4. Defendants further argue that plaintiffs do not present compelling case law supporting their position, while citing decisions such as *Weiser v. Great Am. Ins. Co.*, 453 F. Supp. 3d 711 (E.D. Pa. 2020), *Ho v. Integon Nat'l Ins. Co.*, 2022 WL 3088096 (M.D. Pa. 2022), and *Richard v. Fin. of Am. Mortgages, LLC*, 2019 WL 1980693 (M.D. Pa. 2019). DI 20-4 at 12-13; DI 21-1 at 9; DI 26 at 2.

---

[2] Plaintiffs have a colorable argument for express third-party beneficiary status, but we need not decide that issue. Plaintiffs argue that they are express beneficiaries under the first paragraph of the Endorsement: "It is understood and agreed that throughout this Certificate **you** and **your** refer to the financial institution as **named insured** and the **borrower** shown in the Declarations." DI 22 at 11. Their claim to express beneficiary status holds some weight where the Endorsement specifically changes the Loss Settlement and Loss Payment Provisions to include them. The contract also provides plaintiffs a payout "as their interest appears," arguably supporting a claim to third-party beneficiary status.

For example, defendants rely on *Weiser*, where the court ruled that the plaintiff, who was the owner and payer of premiums but not a named insured, could not recover on an insurance policy for breach of contract and bad faith because the policy showed no intent to benefit him. DI 20-4 at 12-13; DI 21-1 at 9 (citing *Weiser*, 453 F. Supp 3d at 714, 717). Defendants also cite *Ho*, where the plaintiff was not an intended third-party beneficiary of the force-placed insurance policy because the policy primarily protected the lender and did not show that both contracting parties intended to give Ho enforceable rights, making any benefit to him merely incidental. DI 20-4 at 12; DI 21-1 at 9 (citing *Ho*, 2022 WL 3088096, at *5-6). And in *Richard*, the Middle District of Pennsylvania held a mortgagor lacked standing to assert a breach-of-contract claim against the issuer of a force-placed insurance policy because he was neither an insured nor an intended third-party beneficiary under the policy, which was issued solely for the mortgagee's benefit. DI 20-4 at 12 (citing *Richard*, 2019 WL 1980693).

Defendants do not, however, highlight the key differentiating factor in all of these cases: all of the involved policies affirmatively relinquished the borrower of any standing. In *Weiser*, the policy provided that Weiser, as "borrower or mortgagor[,] **has no insurable interest** under this policy as a Named Insured, Additional Named Insured or Additional Insured." 453 F. Supp 3d at 714-15 (emphasis added). In *Ho*, the very first page of the policy disclaimed: "This policy **may not fully protect your interest in the property** listed. This policy **does not provide personal property coverage** or liability coverage, unless indicated above." 2022 WL 3088096, at *5 (emphases added). In *Richard*, the policy stated that it does not "provide coverage for the interest or equity of the mortgagor" and was a "creditor placed insurance, protecting your [the named insured's] mortgagee interest, subject to policy terms and conditions." 2019 WL 1980693, at *1. And, importantly, in all three cases — *Richard*, *Ho*, and *Weiser* — the policies

specified that "you" and "your" referred only to the named insureds. *Weiser*, 453 F. Supp. 3d at 717; *Ho*, 2022 WL 3088096, at *5; *Richard v. Fin. of Am. Mortgages, LLC*, 2019 WL 1980693 (M.D. Pa. 2019), No. 18-cv-559 (ECF 1-6 at 2). In contrast, the Endorsement here specifically modified the language of the Policy to have "**you** and **your** refer to the financial institution as **named insured** and the **borrower** shown in the Declarations." DI 20-1 at 13.

Notably, the Policy here also does not affirmatively relinquish the plaintiffs' interests in coverage. It merely identifies them as borrowers and does not renounce their potential enforcement rights equivalent to that of the Named Insured. DI 20-1 at 13. The borrowers in the aforementioned cases were not intended to benefit from the policies, as evidenced by the language of the contracts at issue in those cases. In contrast, here it appears that plaintiff stood to benefit from the Endorsement, which affirmatively modified the Policy to include them as payees "as their interest[s] appear" and included them within the definition of "you" and "your." *Id.* Defendants' district court decisions do not persuade us that plaintiffs lack standing.

*Scarpitti* also convinces us that dismissal for lack of standing is unwarranted here. *Scarpitti v. Weborg*, 609 A.2d 147, 148 (1992). In that case, homeowners sued an architect after he rejected their garage plans under deed restrictions but later approved similar plans for other homeowners. *Id*. The Pennsylvania Supreme Court held that the homeowners were intended beneficiaries of the implied contract between the developer and the architect to review plans and enforce subdivision restrictions. *Id.* at 150-52. The Court reasoned that the purpose of the agreement was to make the lots marketable to prospective purchasers by assuring that all residents would have to abide by the restrictions. *Id.* at 151. The third-party beneficiary relationship, therefore, was within the contemplation of the named parties at the time of

contracting. *Id.* Thus, the Court held, the homeowners had the greatest interest in enforcement of the restrictions and ought to have a vehicle by which to enforce them. *Id.*

Here, the contract is between ASIC and Rocket, and the purpose of the Loss Settlement Provision of the Endorsement (in which both parties intentionally outlined deviations from the boilerplate policy) is to ensure that the Policy benefits are issued toward one of three balances in the event of a loss: (1) the limit of liability, (2) the replacement cost of the damaged property, or (3) the money spent actually repairing or replacing the damaged property. DI 20-1 at 13. The Loss Payment Provision further states: "Loss will be made payable to the **named insured** and the **borrower** as their interest appear," indicating that the Policy contemplated a benefit to plaintiffs as borrowers. *Id.* And though Rocket asserts that the phrase "as their interest appear" indicates that defendants do not necessarily expressly intend to confer benefits or enforceable rights to plaintiffs, DI 27 at 3-4, plaintiffs undeniably have interests here when (1) their house has burned down; (2) their insurance policy benefits have been issued toward neither their mortgage balance nor the reparation of their home; and (3) their mortgage company is still demanding premiums from them. Plaintiffs correctly point out that the two settlement options — satisfying the remaining mortgage balance or repairing the home — directly involve their interests and plausibly demonstrate that they are intended third-party beneficiaries of the Policy.

Putting all this together, we find that, just as in *Scarpitti*, plaintiffs have plausibly pled that they (1) have a significant interest in seeing through the issuance of the benefits as outlined in the Policy; and (2) benefit from the right to legally enforce the Policy. In light of the missing issuance of the Policy benefits toward the mortgage balance or repair of the home, the redacted Limit of Liability, the language in the Endorsement, and the lack of affirmative language in the

Policy dispossessing plaintiffs of legal enforcement rights, plaintiffs have standing as third-party beneficiaries under the Policy. Defendants have not persuaded us otherwise.

**B. Plaintiffs' complaint is not untimely because the Policy's one-year statute of limitations is unreasonable as applied to plaintiffs**

Plaintiffs' claims are not time-barred under the Policy. When reviewing a motion to dismiss under Rule 12(b)(6), a statute of limitations defense generally cannot be asserted except where the complaint does not comply on its face with the limitations period. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). A provision "limiting the time for commencement of suit on an insurance contract to a period shorter than that provided by an otherwise applicable statute of limitations is valid if reasonable." *Marshall v. Aetna Casualty & Surety Co.*, 643 F.2d 151, 152 (3d Cir. 1981) (citations omitted). However, the Third Circuit has also ruled that an insurer may not insist on strict compliance with a contractual suit-limitation period when the insurer's own conduct misled the insured into a reasonably grounded belief that the claim would be settled, thus inducing the insured to delay filing suit. *See Fratto v. New Amsterdam Fire Insurance Co.*, 359 F.2d 842, 844 (3d Cir. 1966) (per curiam). Such conduct may excuse strict compliance with the limitation. *Id.*

Parties to a contract are also expected to conduct reasonable diligence with respect to a contract's provisions. In insurance policies, if the language is "clear and unambiguous," the insured may not make a coverage dispute claim solely on the basis that they did not read or understand the contract. *Worldwide Underwriters Ins. Co. v. Brady*, 973 F.2d 192, 194 (3d Cir. 1992).

The Policy states that "no action can be brought unless the Certificate provisions have been complied with and the action is started within one year after the date of loss." DI 20-1 at 9. Defendants assert that plaintiffs cannot have it both ways — on one hand insisting that they are

third-party beneficiaries to reap the Policy benefits but on the other hand refusing to be bound by the time limitation provision. DI 21-1 at 10; DI 26 at 1. They argue that plaintiffs' claims must fail as a matter of law because (1) the one-year limitations period is grounded in industry practice and case law; (2) plaintiffs assert that they are intended parties to the contract; and (3) the complaint does not facially comply with the limitations provision. DI 20-4 at 14-16; DI 21-1 at 10-11. We agree with plaintiffs that because they never received the Policy over two years of attempted communication, there was no feasible way that they could have abided by the limitations provision. Under such circumstances, we find that the Policy's one-year limitations period is unreasonable as applied here.

*Fratto* accords. There, the insurance policies required a suit to be filed within twelve months of the loss. The insurers initially authorized Keystone Adjustment Corporation to negotiate and adjust the claims. *Fratto v. Northern Ins. Co.*, 242 F. Supp. 262, 266-67 (W.D. Pa. 1965).[3] Although Keystone's actual authority was later revoked, the insurers did not notify the Frattos or their attorney. *Id.* at 266, 270. Keystone's representative continued to state that negotiations remained open, and settlement discussions continued. *Id.* at 266-67. Relying on those representations, the Frattos' attorney delayed filing suit until approximately fifteen and one-half months after the fire. *Id.* at 269. The District Court reasoned, and the Third Circuit affirmed, that Pennsylvania law did not permit the insurers to foster the belief that the claims would eventually be settled and then rely strictly on the twelve-month limitation period to defeat the resulting suit. *Fratto,* 359 F.2d at 844.

Here, we conclude that it was similarly unfair for defendants to withhold the Policy, which was essential for plaintiffs to decide whether and by when to make a claim, and then try to

[3] The district court decision provides some of the background information that the Third Circuit omitted from its opinion affirming the district court.

use the Policy's one-year-bar provision against the plaintiffs after they brought suit. Plaintiffs detail numerous attempts by their public adjuster and counsel to set up meetings or discuss the outcome of the funds issued to Rocket by ASIC. DI 18 at ¶¶ 23-31. These efforts were made to no avail for two years, long past the Policy's one-year bar. Indeed, plaintiffs drafted and filed the complaint in this case without the benefit of the Policy, getting their first look when defendants attached it to their motions to dismiss. DI 35 at 9:9-18. The principles animating *Fratto* warrant a similar result here.

ASIC/Assurant maintain that plaintiffs failed to detail reasonably diligent efforts to obtain the Policy or be informed of the provisions. DI 26 at 6. They point to multiple cases where plaintiffs "sat idly" while the limitations period lapsed. DI 20-4 at 16 (citing *Pini v, Allstate Ins Co.*, 499 F. Supp. 1003, 1005 (E.D. Pa. 1980); *Toledo v. State Farm Fire & Cas. Co.*, 810 F. Supp. 156, 161 (E.D. Pa. 1992)). The principle is correct but it simply does not apply here. Plaintiffs allege more than sufficient diligence, including repeated, unsuccessful efforts by their public adjuster and counsel over a two-year period to arrange meetings or discuss the disposition of the issued funds. Further, the concern here is not whether the language of the Policy was clear and unambiguous or whether plaintiffs failed to understand the Policy, but rather whether the terms were made available to the plaintiffs such that they could have their day in court. Thus, we deny the motions to dismiss based on the one-year limitation period because, on these facts, the application of this time bar is unreasonable.

**C. Plaintiffs' bad faith claim survives against ASIC but must be dismissed against Rocket**

Plaintiffs stated bad faith sufficiently against ASIC but not against Rocket. Under Pennsylvania law, bad faith may exist when an insurer lacks a reasonable basis for denying benefits and knows of or recklessly disregards that lack of a reasonable basis. *See Brown v.*

*Progressive Insurance Co.*, 860 A.2d 493, 500-501 (Pa. Super. 2004). Bad faith may also involve an inadequate investigation, failure to communicate, or unreasonable delay. *See Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1232 (Pa. Super. 1994); *Brown*, 860 A.2d at 505. But not every mistake qualifies. Mere negligence or bad judgment is insufficient, and bad faith must be proven by clear and convincing evidence. *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1036 (Pa. Super. 1999). The insurer's conduct must "import[] a dishonest purpose" to support bad faith. *Id.* A low yet reasonably supported valuation, or a reasonable legal position in an unsettled area of law, does not constitute bad faith. *Brown*, 860 A.2d at 501, 505.

A bad faith insurer claim cannot apply to Rocket as it relates to the Policy because Rocket is not listed as the insurer. Plaintiffs brought up the mortgage agreement at oral argument, but because we do not have a record on that agreement, the bad faith claim against Rocket cannot proceed.

ASIC/Assurant, for its part, argues that plaintiffs have not pled the threshold elements of a bad faith claim because ASIC did not refuse to pay the Policy benefits, but rather, issued a coverage payment to Rocket. DI 20-4 at 18-19. Plaintiffs maintain that beyond the issuing of the payment, the Policy requires that ASIC pay additional funds *to plaintiffs* to restore their home to its pre-loss conditions. DI 18 at ¶ 40. Further, they allege that ASIC withheld the Policy from them for two years despite numerous attempts at contact. *Id.* at ¶¶ 43-45. The complaint provides enough indicia of delay and failure to act on the part of ASIC to support a bad faith allegation against it.

**D. Assurant is dismissed because it is not a party to the Policy**

Assurant moves to dismiss all claims asserted against it because it is neither a party to the Policy nor a legal entity. DI 20-4 at 20. In support, Assurant offers a declaration from ASIC's

secretary, who avers that Assurant is not a corporate entity but is rather the name used for a subdivision of ASIC. DI 20-2. The Policy does not list Assurant as a party to the contract, nor otherwise mention Assurant in the agreement itself. DI 20-1. Plaintiffs conceded dismissal of Assurant at oral argument so long as ASIC remains in the case. DI 35 at 11:13-24. On this record and with plaintiffs' concession, we dismiss all claims against Assurant.

## IV. CONCLUSION

For the reasons explained above, with the exception of plaintiffs' claims against Assurant Specialty and their bad faith claim against Rocket, this case will proceed to discovery and defendants' motions to dismiss are denied. An appropriate order accompanies this memorandum.